IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SYMBOLOGY INNOVATIONS, LLC, | CASE NO. 2:17-cv-0030 |
| Plaintiff, | PATENT CASE |
| v. | JURY TRIAL DEMANDED |
| TEN: THE ENTHUSIAST NETWORK MAGAZINES, LLC, | |
| Defendant. | |

DEFENDANT TEN: THE ENTHUSIAST NETWORK MAGAZINES, LLC'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant TEN: The Enthusiast Network Magazines, LLC ("TEN") files this Answer and Counterclaims to Plaintiff Symbology Innovations, LLC's ("Plaintiff") First Amended Complaint for Infringement of Patent ("First Amended Complaint"). TEN denies the allegations and characterizations in Plaintiff's First Amended Complaint unless expressly admitted in the following paragraphs.

NATURE OF THE ACTION

1.       TEN admits that the First Amended Complaint purports to set forth an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and that the Plaintiff purports to seek injunctive relief as well as damages, attorney's fees, and costs. TEN further admits that a purported copy of U.S. Patent No. 8,424,752 (the "'752 Patent") is attached to the First Amended Complaint as Exhibit A; U.S. Patent No. 8,651,369 (the "'369 Patent") is attached to the First Amended Complaint

as Exhibit B; U.S. Patent No. 8,936,190 (the "'190 Patent") is attached to the First Amended Complaint as Exhibit C; and U.S. Patent No. 7,992,773 (the "'773 Patent") is attached to the First Amended Complaint as Exhibit D (collectively, the "Patents-in-Suit"). TEN denies it has committed or is committing acts of infringement and/or "profiting, in an illegal and unauthorized manner and without authorization and/or of the consent from Symbology Innovations" such that Plaintiff is entitled to any relief from TEN. TEN denies any remaining allegations in Paragraph 1 of the First Amended Complaint.

## THE PARTIES

2.     TEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the First Amended Complaint and, on that basis, denies all such allegations.

3.     TEN admits the allegations in Paragraph 3 of the First Amended Complaint.

## JURISDICTION AND VENUE

4.     TEN admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     TEN does not contest whether personal jurisdiction over it properly lies in this District in this case, or that it conducts business in the State of Texas. TEN denies it has committed or is committing acts of infringement within the State of Texas or in this District and, on that basis, denies the remaining allegations of Paragraph 5 of the First Amended Complaint.

6.     TEN does not contest whether personal jurisdiction over it properly lies in this District in this case, or that it conducts business in the State of Texas. TEN denies it

has committed or is committing acts of infringement within Texas or in this District and, on that basis, denies the remaining allegations of Paragraph 6 of the First Amended Complaint.

7.      TEN admits that it conducts business in the State of Texas and in this District. TEN denies it has committed or is committing acts of infringement within Texas or in this District and, on that basis, denies the remaining allegations of Paragraph 7 of the First Amended Complaint.

8.      TEN denies it has committed or is committing acts of infringement within Texas or in this District and, on that basis, denies the allegations of Paragraph 8 of the First Amended Complaint.

9.      TEN admits that venue may be proper but denies that venue is convenient in this judicial district as to TEN.

## FACTUAL ALLEGATIONS

### *'752 Patent*

10.      TEN admits that the purported copy of the '752 Patent that is attached to the First Amended Complaint as Exhibit A indicates that it issued on April 23, 2013 and is entitled "System and Method for Presenting Information About an Object on a Portable Electronic Device." TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 of the First Amended Complaint and, on that basis, denies all such allegations.

11.      TEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the First Amended Complaint and, on that

basis, denies all such allegations.

12.    TEN admits that the purported copy of the '752 Patent that is attached to the First Amended Complaint as Exhibit A appears to contain three independent claims and twenty-five dependent claims. TEN denies it has committed or is committing acts of infringement and, on that basis, denies the remaining allegations of Paragraph 12 of the First Amended Complaint.

13.    TEN denies that the claims of the '752 Patent constitute inventions or patent subject matter. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 of the First Amended Complaint and, on that basis, denies all such allegations.

*'369 Patent*

14.    TEN admits that the purported copy of the '369 Patent that is attached to the First Amended Complaint as Exhibit B indicates that it issued on February 18, 2014, and is entitled "System and Method for Presenting Information About an Object on a Portable Electronic Device." TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 of the First Amended Complaint and, on that basis, denies all such allegations.

15.    TEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the First Amended Complaint and, on that basis, denies all such allegations.

16.    TEN admits that the purported copy of the '369 Patent that is attached to the First Amended Complaint as Exhibit B appears to contain three independent claims

and twenty-five dependent claims. TEN denies it has committed or is committing acts of infringement and, on that basis, denies the remaining allegations of Paragraph 16 of the First Amended Complaint.

17.      TEN denies that the claims of the '369 Patent constitute inventions or patent subject matter. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 of the First Amended Complaint and, on that basis, denies all such allegations.

*'190 Patent*

18.      TEN admits that the purported copy of the '190 Patent that is attached to the First Amended Complaint as Exhibit C indicates that it issued on January 20, 2015, and is entitled "System and Method for Presenting Information About an Object on a Portable Electronic Device." TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 of the First Amended Complaint and, on that basis, denies all such allegations.

19.      TEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the First Amended Complaint and, on that basis, denies all such allegations.

20.      TEN admits that the purported copy of the '190 Patent that is attached to the First Amended Complaint as Exhibit C appears to contain three independent claims and seventeen dependent claims. TEN denies it has committed or is committing acts of infringement and, on that basis, denies the remaining allegations of Paragraph 20 of the First Amended Complaint.

21.     TEN denies that the claims of the '190 Patent constitute inventions or patent subject matter. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 of the First Amended Complaint and, on that basis, denies all such allegations.

*'773 Patent*

22.     TEN admits that the purported copy of the '773 Patent that is attached to the First Amended Complaint as Exhibit D indicates that it issued on August 9, 2011, and is entitled "System and Method for Presenting Information About an Object on a Portable Electronic Device." TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 of the First Amended Complaint and, on that basis, denies all such allegations.

23.     TEN is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the First Amended Complaint and, on that basis, denies all such allegations.

24.     TEN admits that the purported copy of the '773 Patent that is attached to the First Amended Complaint as Exhibit D appears to contain three independent claims and fifteen dependent claims. TEN denies it has committed or is committing acts of infringement and, on that basis, denies the remaining allegations of Paragraph 24 of the First Amended Complaint.

25.     TEN denies that the claims of the '773 Patent constitute inventions or patent subject matter. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 of the First Amended Complaint

and, on that basis, denies all such allegations.

**COUNT I**
**[ALLEGED] INFRINGEMENT OF THE '752 PATENT**

26.     TEN incorporates by reference each of its responses set forth in Paragraphs 1-25 above as if fully set forth herein.

27.     TEN denies the allegations in Paragraph 27 of the First Amended Complaint.

28.     TEN admits that it has had knowledge of the '752 Patent since the time it was served with the original Complaint. TEN denies the remaining allegations in Paragraph 28 of the First Amended Complaint.

29.     TEN denies the allegations in Paragraph 29 of the First Amended Complaint.

30.     TEN admits that a Quick Response (QR) code has appeared on some promotional offers for TEN's products and services. TEN denies that it has committed or is committing acts of infringement in this district or elsewhere and, on that basis, denies any remaining allegations in Paragraph 30 of the First Amended Complaint.

31.     TEN incorporates its admissions, averments, and denials in Paragraph 30 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31 of the First Amended Complaint and, on that basis, denies all such allegations.

32.     TEN incorporates its admissions, averments, and denials in Paragraph 30 above as if set forth fully herein. TEN is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in Paragraph 32 of the First Amended Complaint and, on that basis, denies all such allegations.

33.     TEN incorporates its admissions, averments, and denials in Paragraph 30 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33 of the First Amended Complaint and, on that basis, denies all such allegations.

34.     TEN incorporates its admissions, averments, and denials in Paragraph 30 above as if set forth fully herein. TEN admits that product and service information is available on its websites and can be viewed on a portable electronic device.  TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 of the First Amended Complaint and, on that basis, denies all such allegations.

35.     TEN denies the allegations in Paragraph 35 of the First Amended Complaint.

36.     TEN denies the allegations in Paragraph 36 of the First Amended Complaint.

37.     TEN denies the allegations in Paragraph 37 of the First Amended Complaint.

38.     TEN denies the allegations in Paragraph 38 of the First Amended Complaint.

39.     TEN denies the allegations in Paragraph 39 of the First Amended Complaint.

## COUNT II
## [ALLEGED] INFRINGEMENT OF THE '369 PATENT

40.     TEN incorporates by reference each of its responses set forth in Paragraphs 1-39 above as if fully set forth herein.

41.     TEN denies the allegations in Paragraph 41 of the First Amended Complaint.

42.     TEN admits that it has had knowledge of the '369 Patent since the time it was served with the original Complaint. TEN denies the remaining allegations in Paragraph 42 of the First Amended Complaint.

43.     TEN denies the allegations in Paragraph 43 of the First Amended Complaint.

44.     TEN admits that a Quick Response (QR) code has appeared on some promotional offers for TEN's products and services. TEN denies that it has committed or is committing acts of infringement in this district or elsewhere and, on that basis, denies any remaining allegations in Paragraph 44 of the First Amended Complaint.

45.     TEN incorporates its admissions, averments, and denials in Paragraph 44 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45 of the First Amended Complaint and, on that basis, denies all such allegations.

46.     TEN incorporates its admissions, averments, and denials in Paragraph 44 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46 of the First

Amended Complaint and, on that basis, denies all such allegations.

47.      TEN incorporates its admissions, averments, and denials in Paragraph 44 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47 of the First Amended Complaint and, on that basis, denies all such allegations.

48.      TEN incorporates its admissions, averments, and denials in Paragraph 44 above as if set forth fully herein. TEN admits that product and service information is available on its websites and can be viewed on a portable electronic device.  TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48 of the First Amended Complaint and, on that basis, denies all such allegations.

49.      TEN denies the allegations in Paragraph 49 of the First Amended Complaint.

50.      TEN denies the allegations in Paragraph 50 of the First Amended Complaint.

51.      TEN denies the allegations in Paragraph 51 of the First Amended Complaint.

52.      TEN denies the allegations in Paragraph 52 of the First Amended Complaint.

53.      TEN denies the allegations in Paragraph 53 of the First Amended Complaint.

## COUNT III
## [ALLEGED] INFRINGEMENT OF THE '190 PATENT

54.     TEN incorporates by reference each of its responses set forth in Paragraphs 1-53 above as if fully set forth herein.

55.     TEN denies the allegations in Paragraph 55 of the First Amended Complaint.

56.     TEN admits that it has had knowledge of the '190 Patent since the time it was served with the original Complaint. TEN denies the remaining allegations in Paragraph 56 of the First Amended Complaint.

57.     TEN denies the allegations in Paragraph 57 of the First Amended Complaint.

58.     TEN admits that a Quick Response (QR) code has appeared on some promotional offers for TEN's products and services. TEN denies that it has committed or is committing acts of infringement in this district or elsewhere and, on that basis, denies any remaining allegations in Paragraph 58 of the First Amended Complaint.

59.     TEN incorporates its admissions, averments, and denials in Paragraph 58 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 59 of the First Amended Complaint and, on that basis, denies all such allegations.

60.     TEN incorporates its admissions, averments, and denials in Paragraph 58 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 60 of the First

**DEFENDANT TEN'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**                                    **Page 11**

Amended Complaint and, on that basis, denies all such allegations.

61.    TEN incorporates its admissions, averments, and denials in Paragraph 58 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 61 of the First Amended Complaint and, on that basis, denies all such allegations.

62.    TEN incorporates its admissions, averments, and denials in Paragraph 58 above as if set forth fully herein. TEN admits that product and service information is available on its websites and can be viewed on a portable electronic device.  TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 62 of the First Amended Complaint and, on that basis, denies all such allegations.

63.    TEN denies the allegations in Paragraph 63 of the First Amended Complaint.

64.    TEN denies the allegations in Paragraph 64 of the First Amended Complaint.

65.    TEN denies the allegations in Paragraph 65 of the First Amended Complaint.

66.    TEN denies the allegations in Paragraph 66 of the First Amended Complaint.

67.    TEN denies the allegations in Paragraph 67 of the First Amended Complaint.

## COUNT IV
## [ALLEGED] INFRINGEMENT OF THE '773 PATENT

68.     TEN incorporates by reference each of its responses set forth in Paragraphs 1-67 above as if fully set forth herein.

69.     TEN denies the allegations in Paragraph 69 of the First Amended Complaint.

70.     TEN admits that it has had knowledge of the '773 Patent since the time it was served with the original Complaint. TEN denies the remaining allegations in Paragraph 70 of the First Amended Complaint.

71.     TEN denies the allegations in Paragraph 71 of the First Amended Complaint.

72.     TEN admits that a Quick Response (QR) code has appeared on some promotional offers for TEN's products and services. TEN denies that it has committed or is committing acts of infringement in this district or elsewhere and, on that basis, denies any remaining allegations in Paragraph 72 of the First Amended Complaint.

73.     TEN incorporates its admissions, averments, and denials in Paragraph 72 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 73 of the First Amended Complaint and, on that basis, denies all such allegations.

74.     TEN incorporates its admissions, averments, and denials in Paragraph 72 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74 of the First

Amended Complaint and, on that basis, denies all such allegations.

75.     TEN incorporates its admissions, averments, and denials in Paragraph 72 above as if set forth fully herein. TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 75 of the First Amended Complaint and, on that basis, denies all such allegations.

76.     TEN incorporates its admissions, averments, and denials in Paragraph 72 above as if set forth fully herein. TEN admits that product and service information is available on its websites and can be viewed on a portable electronic device.  TEN is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 76 of the First Amended Complaint and, on that basis, denies all such allegations.

77.     TEN denies the allegations in Paragraph 77 of the First Amended Complaint.

78.     TEN denies the allegations in Paragraph 78 of the First Amended Complaint.

79.     TEN denies the allegations in Paragraph 79 of the First Amended Complaint.

80.     TEN denies the allegations in Paragraph 80 of the First Amended Complaint.

81.     TEN denies the allegations in Paragraph 81 of the First Amended Complaint.

## [PLAINTIFF'S DEMAND FOR JURY TRIAL

82.     TEN is not required to provide a response to Plaintiff's request for a trial by jury.

## PRAYER FOR RELIEF

TEN denies the Plaintiff is entitled to any relief from TEN and denies all the allegations contained in Paragraphs (a)-(f) of Plaintiff's Prayer for Relief.

## AFFIRMATIVE DEFENSES

TEN's Affirmative Defenses are listed below. TEN reserves the right to amend its answer to add additional Affirmative Defenses consistent with the facts discovered in this case.

## FIRST AFFIRMATIVE DEFENSE

TEN has not infringed and does not infringe, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '752, '369, '190 and/or '773 Patents (collectively, the "Asserted Patents").

## SECOND AFFIRMATIVE DEFENSE

Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's attempted enforcement of the Asserted Patents against TEN is barred by

the doctrine of inequitable conduct.

## FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff and any predecessors in interest to any of the Asserted Patents failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise give proper notice that TEN's actions allegedly infringe the Asserted Patents, TEN is not liable to Plaintiff for the acts alleged to have been performed before it received actual notice that it was allegedly infringing the Asserted Patents.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts that TEN indirectly infringes, either by contributory infringement or inducement of infringement, TEN is not liable to Plaintiff for the acts alleged to have been performed before TEN knew that its actions would cause indirect infringement.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's attempted enforcement of the Asserted Patents against TEN is barred by one or more of the equitable doctrines of laches, estoppel, acquiescence, waiver, and unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

The claims of the Asserted Patents are not entitled to a scope sufficient to encompass any system employed or process practiced by TEN.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because, among other things, Plaintiff has not stated a plausible allegation that

TEN makes, uses, or sells each claimed element of any asserted claim, or that TEN directs or controls another entity to make, use, or sell any element that is not made, used, or sold by TEN.

## NINTH AFFIRMATIVE DEFENSE

To the extent Plaintiff contends that it alleges a claim for indirect infringement (whether by inducement or contributorily), Plaintiff has failed to state a claim upon which relief can be granted.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because the Asserted Patents do not claim patentable subject matter under 35 U.S.C. § 101.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because, among other things, Plaintiff has not stated a plausible allegation that any system employed or process practiced by TEN: (1) captures a digital image; (2) detects symbology associated with the digital image; (3) decodes the symbology to obtain a decode string; (4) sends the decode string to a remote server for processing; or (5) includes one or more visual detection systems that are configured to run in the background and detect the symbology associated with the object as required by the Asserted Patents.

## TEN'S COUNTERCLAIMS

For its counterclaims against Plaintiff Symbology Innovations, LLC

("Symbology"), Counterclaim Plaintiff TEN: The Enthusiast Network Magazines, LLC ("TEN"), alleges as follows:

## PARTIES

1.      Counterclaim Plaintiff TEN is a corporation organized and existing under the laws of the State of Delaware, with offices located at 831 South Douglas Street, El Segundo, California 90245.

2.      Upon information and belief based solely on Paragraph 2 of the First Amended Complaint as pled by Plaintiff, Counterclaim Defendant Symbology Innovations, LLC, is a limited liability company organized and existing under the laws of the State of Texas and maintains its principle place of business at 1400 Preston Road, Suite 400, Plano, Texas 75093.

## JURISDICTION

3.      TEN incorporates by reference Paragraphs 1–2 above.

4.      These counterclaims arise under the patent laws of the United States, Title 35, United States Code. The jurisdiction of this Court is proper under at least 35 U.S.C. § 271 *et seq.*, and 28 U.S.C. §§ 1331, 1338, 1367, and 2201–02.

5.      Symbology has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District, as set forth in its First Amended Complaint.

6.      Based solely on Symbology's filing of this action, venue is proper, though not necessarily convenient, in this District pursuant at least 28 U.S.C. §§ 1391 and 1400.

## COUNT I

## DECLARATION REGARDING NON-INFRINGEMENT

7. TEN incorporates by reference Paragraphs 1–6 above.

8. Based on Symbology's filing of this action and at least TEN's first affirmative defense, an actual controversy has arisen and now exists between the parties as to whether TEN infringes the '752, '369, '190, and/or '773 Patents (collectively, the "Asserted Patents").

9. TEN does not infringe any valid claim of the Asserted Patents because, among other things, the accused system does not: (1) capture a digital image; (2) detect symbology associated with the digital image; (3) decode the symbology to obtain a decode string; (4) send the decode string to a remote server for processing; or (5) include one or more visual detection systems that are configured to run in the background and detect the symbology associated with the object.

10. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, TEN requests a declaration by the Court that TEN has not infringed and does not infringe any claim of the Asserted Patents under any theory (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)).

## COUNT II

## DECLARATION REGARDING INVALIDITY

11. TEN incorporates by reference Paragraphs 1–10 above.

12. Based on Symbology's filing of this action and at least TEN's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties

as to the validity of the claims of the Asserted Patents.

13.     The asserted claims are anticipated and/or rendered obvious by, *inter alia*, BarPoint.com, Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, U.S. Serial No. 60/118,051, U.S. Serial No. 60/187,646, U.S. Serial No. 60/185,546, U.S. Patent Application 2008/0004978, U.S. Patent No. 6,430,554, and/or U.S. Patent No. 6,651,053.

14.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, TEN requests a declaration by the Court claims of the Asserted Patents are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## COUNT III

## DECLARATION REGARDING UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT

15.     TEN incorporates by reference Paragraphs 1–14 above.

16.     Based on Symbology's filing of this action and at least TEN's Third Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the enforceability of the claims of the Asserted Patents.

17.     The named inventor, Leigh Rothschild, had knowledge of material, non-cumulative prior art regarding the Asserted Patents and, on information and belief, deliberately withheld the material, non-cumulative prior art from disclosure to the United States Patent and Trademark Office ("USPTO") during prosecution of the

Asserted Patents with the intent to deceive the examiner and the USPTO.

18.     On information and belief, Reagan Innovations, LLC, assignee of the
Asserted Patents, and/or the representatives associated with the filing and prosecution
of the applications for the Asserted Patents, had knowledge of material, non-cumulative
prior art regarding the Asserted Patents and, on information and belief, deliberately
withheld the material, non-cumulative prior art from disclosure to the USPTO with the
intent to deceive the examiner and the USPTO.

19.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*,
TEN requests a declaration by the Court that all claims of the Asserted Patents are
unenforceable due to inequitable conduct because one or more of the individuals
referenced above, with the intent to deceive the USPTO, failed to comply with the duty
of candor to the USPTO, as set forth in 37 C.F.R. § 1.56, during prosecution of the
applications that led to the issuance of the Asserted Patents.

A.  Background Facts Relating to Counterclaim of Unenforceability

1.  At the Time of Prosecution, Leigh Rothschild was Aware of Material,
    Non-Cumulative Prior Art Related to Barcode Symbology, Including
    His Own BarPoint System and Related Patents.

20.     On information and belief, due to his long involvement with filing and
prosecuting patent applications, Mr. Rothschild is familiar with policies and practices of
the USPTO and its procedures, including its duty of candor.  In particular, according to
his personal LinkedIn page, Mr. Rothschild:

> is an established inventor who to date has been issued more
> then [sic] eighty US patents and has more than 150 patents
> pending worldwide.  Mr. Rothschild's first patent was

conceived when he was 17 years of age and granted shortly
thereafter.

Exhibit A.

21.     Moreover, Mr. Rothschild has long been familiar with prosecuting patents

in the same field as Symbology's characterization of the Asserted Patents, which

Symbology alleges relates to barcode symbology, namely "Quick Response Codes (QR

codes)." In an online profile, Mr. Rothschild was quoted as saying:

> I have 60 patents—from computer servers to medical to 3D
> displays. Most of my inventions are related to technology,
> such as the method of tying QR codes to the internet….

Exhibit B.

### a.   The Undisclosed BarPoint System

22.     Mr. Rothschild's involvement with barcode technology dates back more

than a decade. On information and belief, in order to make money at alleged inventing,

in the late 1990s and early 2000s, Mr. Rothschild started a few businesses, including

BarPoint.com.

23.     According to BarPoint.com's 2001 Annual Report filed with the SEC:

> BarPoint is an online and wireless product information and
> shopping service provider which also develops mobile device
> software applications for consumers and businesses.
> BarPoint's product information and shopping service
> platform utilizes patent pending reverse search technology to
> enable users to search for product information using unique
> product identifiers, including universal product codes,
> known as UPCs or barcode numbers, catalog numbers and
> SKU numbers.

Exhibit C.

24.     On information and belief, Mr. Rothschild was deeply involved in the affairs of BarPoint.com. In addition to being its founder, he served as Chairman of its Board of Directors from 1998 through 2004. During a portion of that time he also served as its Chief Executive Officer. *See* <u>Exhibit A.</u>

25.     The primary technology that BarPoint.com employed involved scanning a barcode with a handheld mobile device and transmitting the decoded barcode information over the Internet in order to search for product information (the "BarPoint.com system"). According to BarPoint.com's 1999 Annual Report filed with the SEC:

> BarPoint has developed and recently launched a comparative shopping and consumer information Internet site utilizing proprietary reverse search technology that enables consumers to search the Internet for product-specific information using universal product codes, known as UPCs or barcode numbers…. The BarPoint service can be accessed from a desktop computer or a wide variety of Internet-enabled handheld mobile devices, such as personal digital assistants (PDAs), interactive pagers and cell phones. By typing or scanning the barcode number that manufacturers attach to their products, consumers gain access to a variety of information gathered by BarPoint on the specific product….
>
> * * *
>
> On December 6, 1999, we launched a preview version of our website, www.barpoint.com, which features a patent-pending search engine and software technology that allows consumers to use the standard UPC barcode number that appears on what we believe to be more than 100 million retail items to search for product-specific information from and shop for products on the Internet.
>
> * * *
>
> The BarPoint technology can be accessed via the Internet at

www.barpoint.com from desktops or handheld wireless devices. It is presently available on a variety of hand-held and wireless devices including the Palm VII from 3COM/Palm Computing, interactive pagers such as those from Research In Motion, and the SPT 1500, a Palm VII with a built-in scanning device, manufactured by Symbol Technologies.

\*\*\*

The BarPoint service is available through accessing www.barpoint.com through which UPC barcode number searches can be executed by simply typing or scanning in a UPC barcode number.

*See* Exhibit D.

26.     The BarPoint system, publicly known, offered for sale, and used around 1999, is substantially similar to the alleged infringing activity of the Asserted Patents as characterized by Symbology in its First Amended Complaint:

The invention claimed in the [Asserted Patents] comprises a method for enabling a portable electronic device to retrieve information about an object when the object's symbology, is detected.

*See, e.g.*, First Amended Complaint at ¶¶ 13, 17, 21, 25.

27.     As shown in the claim chart attached hereto as Exhibit E, the BarPoint system anticipates and/or renders obvious each and every element of Claim 1 of the '752, '369, and '190 Patents under Symbology's characterization of the Asserted Patents' scope, and thus is material and not cumulative to the information already of record during the prosecution of the Asserted Patents and related applications.

**b.   The Undisclosed Rothschild Patents**

28.     In addition to his firsthand involvement with BarPoint.com, Mr. Rothschild was identified as the sole named inventor for at least three provisional applications that

disclosed the BarPoint.com system, including:

(a) U.S. Serial no. 60/118,051 ("'051 provisional application"), filed Feb. 1, 1999, and entitled "INTERACTIVE METHOD FOR INVESTIGATING PRODUCTS";

(b) U.S. Serial No. 60/187,646 ("'646 provisional application"), filed Mar. 8, 2000 and entitled "INTERACTIVE SYSTEM FOR INVESTIGATING PRODUCTS ON A NETWORK THROUGH A MOBILE DEVICE"; and

(c) U.S. Serial No. 60/185,546 ("'546 provisional application"), filed Feb. 28, 2000 and entitled "METHOD OF VERIFYING BARCODE/UPC NUMBERS OR OTHER SYMBOLOGIES AND LINKING SUCH NUMBERS TO INFORMATION ON A GLOBAL COMPUTER NETWORK."

29.     On information and belief, the '051 provisional application became publicly available, such as through the USPTO's public PAIR website, more than one year prior to the September 15, 2010 earliest effective filing date of the Asserted Patents, because later patent applications published and/or granted claimed priority to them. *See* Manual for Patent Examination Procedure (MPEP) 103 (citing 37 CFR 1.14(a)(1)(iv)-(vi)). The '051 provisional application is attached hereto as Exhibit F.

30.     The following disclosures in the '051 provisional application confirm that the BarPoint system was offered for sale and publicly used prior to the filing dates of the '051 provisional application:

- The '051 provisional application provides a printout from www.barpoint.com entitled "Advertising Barcode," dated January 20, 1999, and shows:

    You no longer need to put long URL web addresses in your ads. **A simple BarPoint barcode connects your ad to the internet!**

- Another printout in the '051 provisional application from www.barpoint.com entitled "Advertising Barcode Demo," dated January 20, 1999, shows:

Another example is the Amazon.com barcode below. Please input this barcode to see how the technology works.



Amazon.com
www.barpoint.com

- Another printout in the '051 provisional application from www.barpoint.com entitled "Link to Your Product's Website," dated January 20, 1999, shows:

> BarPoint.com seamlessly connects your product to the Internet. BarPoint.com makes this possible today with its ▬▬▬▬▬ technology. The current barcode (UPC) that is on your product is the gateway to the internet. Without changing or reprinting your barcode (UPC) a customer can enter (or scan) the barcode and instantly be taken to your website, or instantly email anyone in your company.
>
> It would be impossible for you to list every email address or every specific website that your company offers for its customers. With BarPoint.com this is not necessary. All your customer need do is enter your current barcode (UPC) and they will automatically be given a choice of your websites and email addresses that apply to this product.
>
> BarPoint.com is providing software support for all computers operating under Windows. (Click here to go to our software download page) Many companies (Palm Pilot, Symbol, Casio, IBM, Phillips, NEC, Everex, and many others) are now selling Portable Digital Assistants. Barcodes can either be manually input or electronically scanned with many of the scanning devices available to the consumer (Click here to see some of these devices) With millions of these devices in use customers will be inputting barcodes (UPCs) and searching for results. BarPoint.com will connect these customers to your product and internet site.

<u>Exhibit F</u>.

31.     Based on the provisional application's disclosures and Mr. Rothschild's firsthand involvement with BarPoint.com, it was known to Mr. Rothschild, his assignee Reagan Innovations, LLC, and/or their representatives associated with the filing and prosecution of the applications for the Asserted Patents, that the BarPoint system

described in the provisional applications was offered for sale and publicly used prior to the filing dates of the provisional applications.

32.    Mr. Rothschild's representatives subsequently filed several non-provisional applications that claim priority to the '051, '646, and '546 provisional applications, including the applications for U.S. Patent No. 6,430,554 ("'554 Patent"), which issued on August 6, 2002, and U.S. Patent No. 6,651,053 ("'053 Patent"), which issued on November 18, 2003, each of which names Mr. Rothschild as the sole inventor. These patents are attached hereto as Exhibits G-H.

33.    On June 30, 2006, Mr. Rothschild filed U.S. Patent Application 2008/0004978 ("'978 application") with the USPTO.  The '978 application was published January 3, 2008 and is attached hereto as Exhibit I.

34.    The '978 application disclosed "a system and method … for identifying an article of commerce, e.g., digital media content, and downloading all or part of content related to the article of commerce to mobile devices such as portable digital media players and/or mobile phone devices" over the Internet. *Id.*, Paras. 0007, 0035.   The '978 application further disclosed capturing a barcode and decoding the barcode in order to acquire an identification code of the article of commerce:

**[0037]** The user will utilize the portable digital device **100** to identify the article of commerce. For example, if the article of commerce **310** includes a barcode **312**, the device **100** will scan the barcode **312** with the scanning module **124** and decode the barcode to acquire an identification code of the article. Alternatively, the device **100** will capture an image of the barcode using the capture module **122** and decode the barcode to acquire an identification code of the article. Furthermore, the user can also take a picture of the article of commerce via the capture module **122**. Then using standard and existing computer processing power and software solutions such as Attrasoft Image recognition software, or optical character recognition software (OCR software such as OmniPage or ReadIris) the image or name of the article of commerce is decoded and the identity of the article of commerce is resolved.

*Id.*, Para. 0037.

35.     The '051, '646, and '546 provisional applications, the '978 application, and the '554 and '053 Patents (collectively, the "Rothschild Patents"), each anticipates and/or renders obvious each and every element of Claim 1 of the '752, '369, and '190 Patents under Symbology's characterization of the alleged infringing activity, as shown in the exemplary claim charts for the BarPoint system, the '978 application, and the '554 Patent, attached hereto as Exhibits E, and J-K, and thus the Rothschild Patents prior art is material and not cumulative to the information already of record during the prosecution of the Asserted Patents and related applications.

### c.  Other Material Prior Art

36.     Mr. Rothschild noted in the Asserted Patents' specification that "[s]ome applications that may be downloaded to portable electronic devices include symbology scanning and/or decoding programs [including] Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc." Exhibit L ('752 Patent at 3:29-33).

37.     Mr. Rothschild, however, indicated only that these prior art systems "scan[]" or "decode[]," but notably failed to disclose to the USPTO that these prior art systems also capture a digital image of a barcode and send decoded information (such as a URL) to a remote server to retrieve information for display (such as a web page).

38.     As shown in the claim charts attached as Exhibits M-N, the prior art systems identified in the specification, but not fully disclosed by Mr. Rothschild, anticipate and/or render obvious each and every element of Claim 1 of the '752, '369, and '190 Patents under Symbology's characterization of the alleged infringing activity, and thus full disclosure of the prior art systems is material and not cumulative to the information already of record during the prosecution of the Asserted Patents and related applications.

**2. Leigh Rothschild Deliberately Withheld Material, Non-Cumulative Prior Art References During Prosecution of the Asserted Patents and Related Applications**

39.     Despite Mr. Rothschild having deep knowledge of the Barpoint system, the Rothschild Patents, and other material, non-cumulative prior art related to technology Symbology alleges the Asserted Patents cover, Mr. Rothschild, his assignee Reagan Innovations, LLC, and/or their representatives associated with the filing and prosecution of the applications for the Asserted Patents did not submit or identify any prior art during the prosecution of the Asserted Patents and related applications, nor did the prosecuting attorney(s) submit to the examiner a single Information Disclosure Statement (IDS) identifying any prior art.

40.     The BarPoint system, the Rothschild Patents, and the prior art systems identified in the specification, are each material to patentability of the claims of the

Asserted Patents and not merely cumulative over the prior art that was before the examiner.

41.     Mr. Rothschild, Reagan Innovations, LLC, assignee of the Asserted Patents, and/or the representatives associated with the filing and prosecution of the applications for the Asserted Patents, knew of the BarPoint system, the Rothschild Patents, and the prior art systems identified in the specification, and, on information and belief, deliberately failed to disclose the prior art to the USPTO in connection with prosecuting the applications for the Asserted Patents, with the intent to deceive the examiner and the USPTO.

42.     Had Mr. Rothschild, his assignee Reagan Innovations, LLC, and/or their representatives associated with the filing and prosecution of the applications for the Asserted Patents made the examiner aware of the BarPoint system, the Rothschild Patents, and that the prior art systems identified in the specification anticipate and/or render obvious each and every element of the independent claims of the '752, '369, and '190 Patents under Symbology's characterization of the alleged infringing activity, the examiner would not have allowed the claims to issue.

### 3. By Withholding Material, Non-Cumulative Prior Art During Prosecution of the Asserted Patents, Leigh Rothschild Intended to Deceive the USPTO

#### a. Leigh Rothschild Lost His Interest in the BarPoint System and Rothschild Patents in Late 2010

43.     The failure of Mr. Rothschild, his assignee Reagan Innovations, LLC, and/or their representatives associated with the filing and prosecution of the

applications for the Asserted Patents to disclose the BarPoint system and the Rothschild Patents prior art, as well as other material prior art, was with the intent to deceive the USPTO.

44.     Mr. Rothschild sought and obtained the Rothschild Patents claiming an alleged invention by which a customer scans a barcode with a handheld mobile device, and transmits the decoded barcode information over the Internet in order to retrieve product information on the mobile device.

45.     Mr. Rothschild sought monetary gain through the founding of BarPoint.com by assigning the Rothschild Patents to BarPoint.com in order to commercialize the alleged inventions of the Rothschild Patents.

46.     According to SEC filings, BarPoint.com initially was not a commercial success:

> Revenue from [BarPoint.com's wireless Internet software] business was limited and decreased through 2002. In 2003, this business generated no revenue and we began searching to acquire another business…. Effective in August 2004 Mr. Rothschild resigned as a director of the Company.

Exhibit O (2004 SEC Annual Report, Description of Business).

47.     On or about April 11, 2005, however, BarPoint.com sold the Rothschild Patents to NeoMedia Technologies, Inc. in exchange for a cash payment and royalties in the amount of 10% of licensing proceeds generated by NeoMedia for 10 years. *Id.* (Intellectual Property). On information and belief, NeoMedia undertook an enforcement campaign that generated royalties due under the agreement.

48.     BarPoint.com's successor-in-interest subsequently declared bankruptcy,

and the Rothschild Trust, for which Mr. Rothschild was the managing member, purportedly purchased the rights to the licensing proceeds generated from the Rothschild Patents. *See* Exhibit P (Settlement Agreement).[1]

49.     On information and belief, Mr. Rothschild, and/or one or more entities he controlled, received compensation for licensing proceeds from the enforcement of the Rothschild Patents. Consequently, Mr. Rothschild remained deeply familiar with the BarPoint.com system and the Rothschild Patents, including their disclosures and claims.

50.     Mr. Rothschild's rights to benefit from the Rothschild Patents ceased in late 2010 when he entered into a settlement agreement with NeoMedia assigning all rights in the Rothschild Patents to NeoMedia.

### b. Leigh Rothschild's Initial Attempt to Reclaim Technology Disclosed in BarPoint System and Other Undisclosed Prior Art Was Rejected.

51.     On September 15, 2010, Mr. Rothschild filed a patent application that ultimately issued as U.S. Patent No. 7,992,773 ("'773 Patent"), entitled "SYSTEM AND METHOD FOR PRESENTING INFORMATION ABOUT AN OBJECT ON A PORTABLE ELECTRONIC DEVICE," attached as Exhibit Q. Each of the '752, '369, and '190 Patents is a continuation of the application that led to the '773 Patent and thus shares a common specification.

52.     With at least one substantial exception, the general subject matter of the '773

---

[1] Available publicly at:
https://www.sec.gov/Archives/edgar/data/1022701/000114420410066649/v205602_ex10-1.htm.

Patent and the '752, '369, and '190 Patents is nearly identical to the BarPoint system and the Rothschild Patents. For example, the summary of the '773 Patent states:

> Systems and methods are provided for allowing a user to utilize a portable electronic device to retrieve information about an object in response to the portable electronic device detecting symbology, e.g., a barcode, associated with the object.

<u>Exhibit Q</u> at 1:56-60.

53.     However, the '773 Patent's specification notes alleged problems with prior art barcode scanning applications:

> Some applications that may be downloaded to portable electronic devices include symbology scanning and/or decoding programs. Examples of applications that allow scanning include Neomedia's Neo Reader, Microsoft's Smart Tags, Android's Shop Savvy, Red Laser, ScanBuy, etc. *However, when a user wishes to scan an object, the user must then select an application on the portable electronic device that is capable of accomplishing the desired functions. Since a user may have dozens of applications loaded on his or her portable electronic device, it may be difficult to select the appropriate application for executing the scanning functions*.

*See, e.g., id.* at 3:20-30 (emphasis added).

54.     In the specification, Mr. Rothschild thus proposed a solution wherein the alleged improvement over the prior art barcode scanning applications involves "one or more visual detection systems [that] are *run in the background* of the device, where other programs or systems are given priority with respect to processing steps over the one or more visual detection systems." *Id.* at 11:63-66 (emphasis added). "*If a background application detects* decodable symbology… the detected symbology is sent to one or more pre-selected visual detection applications for decoding and information retrieval."

*Id.* at 12:19-33 (emphasis added).

55.     Notwithstanding this purported inventive feature, Mr. Rothschild initially attempted to prosecute independent claim 1 of the patent application that ultimately issued as the '773 Patent without this limitation and covering only that which BarPoint and other prior art barcode scanning applications disclosed.

56.     At no point during the prosecution of the '773 Patent or the continuation applications did Mr. Rothschild disclose to the USPTO the BarPoint system, the Rothschild Patents, or the full capabilities of the prior art barcode scanning applications identified in the specification.

57.     In the December 2010 Non-Final Rejection, the examiner rejected claim 1 under 35 U.S.C. 102(b) as being anticipated by Fitzpatrick et al. (2008/0201310) ("Fitzpatrick"), which disclosed all of the limitations in the originally-drafted version of claim 1:

With respect to claims 1, 13, and 17 Fitzpatrick discloses in paragraph 0051-
0052 detecting symbology associated with an object, decoding the symbology to obtain
a decode string, sending the decode string to one or more visual detection applications
for processing, the one or more visual detection applications residing on a portable
electronic device, receiving a first amount of information about the object from the one
or more visual detection applications, sending the decode string to a remote server for
processing, receiving a second amount of information about the object from the remote
server, combining the first amount of information with the second amount of information
to obtain cumulative information, and displaying the cumulative information on a display
device associated with the portable electronic device. Specifically, Fitzpatrick teaches
in paragraph 0051, scanning a code with a mobile device and partially decoding the
code within the mobile device. Paragraph 0052 discloses scanning a code (155) using
a camera phone (156) and converting the resulting image to an MMS format to be sent
via short code to a server. Once the MMS code reaches the server, the image
information may be enhance, manipulated, and/or otherwise processed (160) so as to
aid in determining the appropriate content. After the processing, the determined image
content is sent back to the user's camera phone. Also refer to paragraph 0062.

*See* Exhibit R ('773 File History, December 27, 2010 Non-Final Rejection at 2-3).

58. To overcome the December 2010 rejection, Mr. Rothschild narrowed claim 1

of the '773 Patent to include the purportedly novel feature identified in the specification:

**Claims:**

1.    (Currently Amended)  A method comprising:

detecting symbology associated with an object;

decoding the symbology to obtain a decode string;

sending the decode string to one or more visual detection applications for processing, the one or more visual detection applications residing on a portable electronic device;

receiving a first amount of information about the object from the one or more visual detection applications;

sending the decode string to a remote server for processing;

receiving a second amount of information about the object from the remote server;

combining the first amount of information with the second amount of information to obtain cumulative information; and

displaying the cumulative information on a display device associated with the portable electronic device;

wherein one or more visual detection systems are configured to run in the background with respect to other systems associated with the portable electronic device, the visual detection systems comprising the one or more visual detection applications and one or more visual detection devices, the one or more visual detection devices configured to detect the symbology associated with the object.

*See* Exhibit S ('773 File History, January 13, 2011 Claim Amendment).

59.    In the March 2011 Notice of Allowance, the examiner expressly noted that the prior art taught:

(a) detecting a symbology associated with an object;

(b) decoding the symbology to obtain a decode string;

(c) sending the decode string to a remote server for processing;

(d) receiving information from the server; and

(e) displaying the information on a display device.

*See* Exhibit T ('773 File History, March 28, 2011 Notice of Allowance at 2-3).

60.     In the March 2011 Notice of Allowance, the examiner confirmed that the purported "novelty" of the invention as allowed in claim 1 of the '773 Patent was the visual detection systems that run in the background and detect the symbology associated with an object:

> displayed, and e-commerce options.  Prior art additionally fails to teach wherein one or more visual detection systems are configured to run in the background with respect to other systems associated with the mobile device, wherein the visual detection systems comprise the one or more visual detection applications and one or more visual detection devices and wherein the one or more visual detection devices are configured to detect the symbology associated with the object.  Prior art fails to teach the method further including analyzing the decode string to determine a category of the object and selecting one or more appropriate applications to process the decode string when the one or more visual detection applications are not pre-selected.  Lastly, prior

*Id.* at 3.

61.     As a result of the patentee's amendment to claim 1, every independent claim of the '773 Patent includes the limitation in which a "background" visual detection system "automatically" decodes "symbology" and sends the decode string to another "visual detection application" residing on the portable device.

      c.   **Mr. Rothschild Intentionally Omitted the Limitations Found in Claim 1 of the '773 Patent During Prosecution of the '752, '369, and '190 Patents in Order to Recapture the Scope of the BarPoint.com System He No Longer Controlled**

62.     Despite the purported novelty identified in the specification and by the examiner during prosecution of the parent application, Mr. Rothschild, his assignee Reagan Innovations, LLC, and/or their representatives associated with the filing and

prosecution of the applications for the '752, '369, and '190 Patents, undertook a concerted effort to omit the limitation related to the alleged improvement that had been expressly included in claim 1 of the '773 Patent in order to overcome the examiner's rejection based on anticipation grounds.

63.     Unlike claim 1 of the '773 Patent, the independent claims of the '752, '369, and '190 Patents do not include the limitation that requires a "background" system that "decod[es] the symbology to obtain a decode string" and "send[s]the decode string to one or more visual detection applications for processing."

64.     On information and belief, Mr. Rothschild's goal during prosecution of the Asserted Patents was to broaden the independent claims in the continuation applications to recapture the scope of the invention related to the BarPoint system that he had assigned to NeoMedia and for which, as of 2010, he no longer had rights to exploit. Mr. Rothschild would not have been able to achieve this goal if he disclosed the BarPoint system, the Rothschild Patents, and the full capabilities of the prior art barcode scanning applications identified in the specification, to the examiner during the Asserted Patents' prosecution before the USPTO.

65.     Had Mr. Rothschild, his assignee Reagan Innovations, LLC, or their representatives associated with the filing and prosecution of the applications for the Asserted Patents made the examiner aware of the undisclosed, material, non-cumulative prior art in Mr. Rothschild's possession, the examiner would not have allowed the independent claims of the '752, '369, and '190 Patents to issue.

66.     Mr. Rothschild, his assignee Reagan Innovations, LLC, and/or their

representatives associated with the filing and prosecution of the applications for the Asserted Patents intended to deceive the USPTO by intentionally failing to disclose the BarPoint system, the Rothschild Patents, and the full capabilities of the prior art barcode scanning applications identified in the specification, in order to recapture patent rights to subject matter Mr. Rothschild no longer controlled.

## PRAYER FOR RELIEF

WHEREFORE, TEN asks this Court to enter judgment in TEN's favor and against Symbology by granting the following relief:

a)      a declaration that the Asserted Patents are invalid;

b)      a declaration that TEN does not infringe, under any theory, any valid claim of the Asserted Patents that may be enforceable;

c)      a declaration that the Asserted Patents are unenforceable;

d)      a declaration that Symbology take nothing by its First Amended Complaint;

e)      judgment against Symbology and in favor of TEN;

f)      dismissal of the First Amended Complaint with prejudice;

g)      a finding that this case is an exceptional case under 35 U.S.C. § 285 and an award to TEN of its costs and attorneys' fees incurred in this action; and

h)      further relief as the Court may deem just and proper.

## JURY DEMAND

TEN hereby demands trial by jury on all issues.

Dated:  April 24, 2017

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  */s/ David B. Conrad*
Neil J. McNabnay
mcnabnay@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704
Theresa M. Dawson
tdawson@fr.com
Texas Bar No. 24065128

1717 Main Street, Suite 5000
Dallas, Texas  75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

**COUNSEL FOR DEFENDANT
TEN: THE ENTHUSIAST NETWORK
MAGAZINES, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 24, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla